R.J. MCMAHON, Commissioner Savings and loan
You have requested my opinion as to the extent to which sec.138.053, Stats., applies to the use of a series of short-term renewable balloon notes to provide a borrower with long-term mortgage financing. Section 138.053 (1) and (2), Stats., provides as follows:
 (1) No contract between a borrower and a lender secured by a first lien real estate mortgage on, or an equivalent security interest in, an owner-occupied residential property containing not more than 4 dwelling units may authorize the lender to increase the borrower's contractual rate of interest unless the contract provides that:
 (a) No increase may occur until 3 years after the date of the contract;
 (b) No increase may occur unless the borrower is given at least 4 months' written notice of the lender's intent to increase the rate of interest, during which notice period the borrower may repay his or her obligation without penalty;
 (c) The amount of the initial interest rate increase may not exceed $1 per $100 for one year computed upon the declining principal balance;
 (d) The amount of any subsequent interest rate increase may not exceed $1 per $200 for one year computed upon the declining principal balance;
 (e) The interest rate may not be increased more than one time in any 12-month period; and
 (f) The loan may be prepaid without penalty at any time at which the interest rate in effect exceeds the originally stated interest rate by more than $2 per $100 for one year computed upon the declining principal balance.
 (2) No lender may make a loan secured by a first lien real estate mortgage on, or an equivalent security interest in, an owner-occupied residential property containing not more than 4 *Page 34 
dwelling units providing for prospective changes in the rate of interest unless it has clearly and conspicuously disclosed to the borrower in writing:
 (a) That the interest rate is prospectively subject to change;
 (b) That notice of any interest adjustment must be given 4 months prior to any increase; and
 (c) Any prepayment rights of the borrower upon receiving notice of such change.
The statute provides significant safeguards to borrowers in the way of limitations on increases, notice periods and required disclosures.
You indicate that recent increases in the cost of funds to financial institutions and continuing uncertainty about the economy have resulted in the modification of lending practices by Wisconsin savings and loan associations. In the past it has been common practice for savings and loan associations to make loans on a long-term basis with the term of the note and the term of the mortgage equal in duration.
At the present time, however, many associations have begun to offer loans in which the note is for a short term while the mortgage is written for a substantially longer period. For example, you have advised that a lender might offer a two-year note secured by a thirty year mortgage providing for monthly payments based on a thirty year amortization period. At the end of those two years the note becomes due and the remaining principal balance would be payable in full as a balloon payment. At that time the loan would be subject to renegotiation. If the parties are unable to agree to terms for refinancing the balloon, the borrower's option is to obtain financing elsewhere.
You have asked whether the requirements of sec. 138.053, Stats., apply to a transaction such as the one just described. It is my opinion that they do not.
You have correctly observed that there does not appear to be any provision of Wisconsin law which would prevent the use of renewable notes in this way except in those transactions subject to the provisions *Page 35 
of the Wisconsin Consumer Act which have an annual percentage rate of 16.5 percent or more. Sec. 422.402, Stats. Since the Wisconsin Consumer Act does not apply to transactions in which the amount financed exceeds $25,000 (sec. 421.202 (6), Stats.), there are not likely to be a large number of such transactions.
In your letter you express the view that borrowers are best served by a contractual assurance of "full term financing" such as by means of a provision by which the lender agrees to refinance the remaining principal balance of the loan each time a short-term note comes due, even though the terms of the new note may be subject to renegotiation at the time of each renewal. You state that most savings and loans offering this type of financing would be willing to provide for such contract provisions but that they are concerned that to do so may bring them within the limitations of sec. 138.053, Stats. It is my opinion that the inclusion of such a provision would not change the nature of the transaction so as to require compliance with sec. 138.053, Stats.
While the cases have not directly addressed the question of whether a lender can accomplish indirectly the right to increase interest rates subsequent to the execution of the loan contract without complying with the requirements of sec. 138.053, Stats., it is my opinion that the statute is unambiguous and that it requires compliance only where the right to increase interest rates is conferred by the contract itself.
Section 138.053, Stats., was created by ch. 387, Laws of 1975, and took effect on June 12, 1976. Since I believe that the statute is unambiguous, it is not necessary to look to its legislative history for guidance in interpretation. I do note, however, that throughout the history of this section and its predecessor, sec. 215.21 (3), Stats. (1973), the statutory sections have clearly referred to the provisions of the loan documents themselves to determine whether the transaction was covered by the statutory limitations.
I note that there are numerous ways in which a lender can subject a loan transaction to subsequent changes in material terms and suggest *Page 36 
that this may be an appropriate area for the promulgation of administrative rules for the guidance of lenders and borrowers.
BCL:RAV